SOMERS L. DOUGHTY, complainant,

*v.*

ISABEL DOBBIN, defendant.

[Decided December 1st, 1930.]

*Mr. John C. Reed* and *Mr. Emerson Richards,* for the complainant.

*Messrs. Cole & Cole* and *Mr. Paul M. Salsburg,* for the defendant.

INGERSOLL, V. C.

The defendant, Isabel Dobbin (now Isabel Naame), is the child of the deceased wife of complainant by her former husband. She continued to live in the household of complainant after the death of her mother.

On December 30th, 1922, and on September 19th, 1925, the complainant, by deeds bearing said dates, conveyed the two tracts of land described in the complainant's bill to the defendant, for the express consideration of $100 and natural love and affection.

It is admitted that these conveyances were gifts to his stepdaughter of this land. These premises were improved by erecting thereon apartment buildings and remodeling old structures. The complainant advanced moneys for said work to the extent of $136,000. After the completion of the build-

ings, the defendant secured three mortgages, one realizing $24,451.50, one $33,617.48 and a third $33,826.75, aggregating $91,895.73, which moneys were received by the complainant and credited by him on account of the money so advanced by him. Later, an additional payment of $250 was made. The complainant also insists that there is also an additional sum due him by reason of the fact that to pay off a mortgage of $35,000. The complainant borrowed through the use of complainant's credit, the sum of $30,000, all of which has been paid by defendant, except the sum of $8,000, which is represented by a note of $8,000 upon which he is endorser.

The complainant prays that an accounting may be had and that defendant pay to complainant the amount found to be due, or in default thereof, the amount so found to be due to be decreed to be a lien and charge on said land and premises described in the bill of complaint in the nature of an equitable mortgage.

The defense is that all sums of money so advanced were gifts to her by her stepfather. A great amount of testimony has been taken and it can be of little avail to recite it. The land was a gift but I am convinced that the money advanced by Doughty for the building and construction of these buildings was not intended to be a gift. This view is sustained by reason of two facts, the first that he received the proceeds of all of the mortgages and secondly by the fact that she paid to Doughty a check of $500 from the bank account of the "Ohio apartments," on the face of which appears "for account of Savoy and Ohio apartments, to Somers Doughty—principal."

Mrs. Naame testified as follows:

"The morning that I gave him this check he nagged me and fought with me about Mr. *Doughty* [Naame?] from breakfast time until I finished dressing, followed me from room to room in a terrible temper, I was afraid of my life, and he said if I was a man he would knock me down, then in the heat of anger he said, 'you still owe me money for that furniture.' I said, 'no, I paid you for that furniture.' He said, 'you still owe me money. Can I have a check?' I

said, 'well, if that is the way you feel about it, how much do you want?' He said, 'I will take five hundred dollars,' so I was so excited I said, 'come on down stairs.' He followed me down stairs and stood over me while I wrote this check and made me write on there 'Ohio and Savoy apartments to Somers Doughty, principal,' and grabbed the check out of my hands, grabbed out of my hands, and came back later on very much calmed down, and laughed at me, 'now I have got you. I will get everything I ever gave you. I will take it back from you if you marry Joe Naame.' I said, 'I don't see how you can do that.' He said, 'I have got the evidence; you only borrowed my money; that is the evidence I wanted to get and you did it for me.' Several days after that he came to the Ohio apartments and threatened to kill Mr. Naame with the club. The following week he followed me to the Savoy apartments and threatened to kill Mr. Naame again and hit him on the jaw and broke his own knuckles."

Mr. Doughty's explanation of the check is that the check was made out for $500, $250 on account of the Savoy apartments and $250 on account of the Ohio apartments, which made $500 all in one check, and followed her refusal to execute a mortgage for $75,000 on the property in question as she had on the other property. He gives the circumstances of the check as follows:

"She left it, she give it to the maid to give to me, gave it to the maid and the maid gave it to me after I left her, after I asked her for it. The maid give it to me when I came home and I looked at it and laughed, laid it down on the desk and walked out and left that laying there, such a small amount."

He finally took it and deposited it. In this he is corroborated by the testimony of the maid to whom the check was given by Mrs. Naame to deliver to Doughty.

Mrs. Naame's story is also refuted to some extent by the testimony of the expert on handwriting, who testified that he found the writing to be identical in nervous and muscular characteristics with the other writing of Isabel Dobbin. He

found it to be the natural writing of the same party who did the other Isabel Dobbin writings, and to be in no respect abnormal or unusual, to follow in every respect the customary and usual writing habits of this particular person, and showed no signs of excitement at the time it was written. Doughty had this check photographed and the photograph only is offered in evidence, Mrs. Naame being unable to find the original, although it passed through her account in bank and was returned to her.

I am convinced that the testimony of Mrs. Naame does not give the court the benefit of the true facts in so far as this check is concerned, and while the maxim *falsus in unofalsus in omnibus* is not a mandatory rule of evidence (*Addis* v. *Rushmore, 74 N. J. Law 649*), where a defendant's testimony is discredited by documentary proofs and by the contradiction of other and disinterested witnesses in relating facts of which all may have knowledge, her testimony cannot be relied upon when narrating incidents (the truth of which is essential to her defense) which lie solely within her knowledge. *Sinclair* v. *Sinclair, 57 N. J. Eq. 222.* Finding this testimony of Mrs. Naame's false and considering her demeanor and manner of testifying, I am convinced that her testimony can have but little weight.

I am unable to find any testimony which is at all convincing that the repayment to him was to be limited to the amounts which were obtained through the mortgage loans. Ordinarily, the improvements made will be presumed to be gifts to the stepdaughter, unless that presumption is sufficiently overcome by proofs. *Selover* v. *Selover, 62 N. J. Eq. 761; Prisco* v. *Prisco, 90 N. J. Eq. 289.*

I am satisfied that the presumption of a gift has been overcome by the evidence with that degree of certainty that is required in such circumstances. I will advise a decree in accordance with these views. If it becomes necessary, I will advise a reference to ascertain the correct amount.